USAA General Indemnity I may please the court I'm good morning mr. Burlington yeah I you know it's always best if I first recognize you before you start talking but let's go it's nice to be back in the theater of the round here yeah it's good to have you can you hear me okay yes good hear you fine we are here seeking review of an order on summary judgment which we believe is defective legally and factually the primary legal defect is the trial court expressly declined to consider the totality of the circumstances on the rationale that the proper disclosures had been made under 627 4137 I would submit that the trial courts analysis is faulty because it conflates the elements of breach of duty with causation the breach of duty is determined on the totality of the circumstances the case law is legion and consistent on that point and no case was cited to the contrary below and no case is cited to the contrary before this court so what the judge did was simply focused on what would be the causal issue of but for the negligence would excuse me but for the bad faith would the case have settled and that is an error as a matter of law and the totality of the circumstances here involved two primary breaches of the duty one relating to the inadequate disclosures and the other related to the unreasonable delay in tendering the limits in fact the trial judge mentioned at page 30 of the hearing that he thought it was too long that they waited to tender the limits and he did that even though he in another we believe legal error decided that the ten days that the claimant was in a coma would not be counted in analyzing the timeliness of USAA's conduct and that is contrary to go again it's also contrary to common sense that fulfilling their duty is not suspended because of the extreme injuries of the claimant they have an obligation from the outset one of the other persons who was involved in the accident gave them notice on the same day of the accident and therefore their duty to protect their insured began at that point one of the other errors in the trial court's order is that it focuses almost exclusively on the conduct of claimant's counsel which is violative of extensive Florida case law that says focuses on the conduct of the insurance company which is consistent with the fact that the element of the offense is was the breach of duty constituting bad faith not the situation that the insurance company faced certainly the conduct of claimant's counsel is relevant but it cannot control and it is not in this case in no way could it be reasonably construed to have deprived the insurance company of a reasonable opportunity to settle now I have done this work long enough to acknowledge that there are pirates in the ranks of plaintiff's counsel but this record cannot be Ms. Furman counsel for the claimant in that category as we detail in our brief she was responsive to contact she did not make unreasonable deadlines she did not impose ambiguous conditions she sent an unambiguous let me ask the question to you this way and let's assume for the purposes of my question that there's enough evidence in the record to take to the jury the question of bad faith you also have to establish that the bad faith causes in substantial measure and excess judgment against the insured correct help me understand on this statement that she said if I had known in September when the insurance company tendered the limits of the policy that there was no other insurance I would have taken it and urge my clients to take it is there any evidence beyond that that shows causation well the and I don't think this is exactly what you wish to accept but there is a duty on the part of the insurance company to make disclosures and to facilitate act reasonably as a person would facing the possibility of an excess judgment and act with the diligence and care required I guess to sort of flesh out the question the reason I raise it is so firm in file suit in state court says she did it because she wanted to depose two people and hoped to learn in substance whether there was additional insurance something that she did not get from USAA she gets an answer to the that there is no other insurance this is all she wrote 10,000 bucks the injuries are you know 40 times that maybe more she still doesn't accept the offer and goes forward with the lawsuit well in her they argue and the district judge basically referenced the fact that this really can't be the explanation for why this case didn't settle what I want you to tell me is what evidence there is in the record from which a reasonable juror could reasonably have found or inferred the requisite causation ok well first of all I have to disagree with the assumption that that could not be sufficient in itself and the reason is that that being the statement of Miss Furman yes the statement that the had to determine but she testified that when she took Dunbar's deposition she learned other facts about the conduct of USAA that demonstrated that it had acted in bad faith and this would include the fact that despite the purpose of my question I'm accepting that you've got a jury question to the extent the trial judge said there's not enough evidence to take to the jury bad faith let's just assume that was just dead wrong it was a jury question they were material facts and dispute from my question I accept that my question to you is a different one assuming that's so how do you show on this record causation do you rely just on the testimony of Miss Furman or is there anything else I reread her substantively she really said about this to my lights this basic causation question what is there beyond Furman's testimony on causation her testimony is crucial mr. tell me what she says what she said takes the question to the jury what she says is she would have accepted the $10,000 even prior to the date it was if there been at the appropriate disclosures and so if they had made the appropriate disclosures the case would have settled then it never would have gone never been filed never would have gone but but just to follow up on what judge Marcus is asking she even assuming that to be the case I mean she did say that obviously but then she takes the two depositions and finds out that there are no other there there are no other sources so what is different at that point that allows us to find that there's a material issue of fact as to whether USAA's failure to tender caused her to go forward with the lawsuit against Dunbar well there's there there is the fact of the delay but also at point she is representing her client and at that point when the deposition of Dunbar reveals the various other failures of USAA she has a decision to make of what is in the best interest of her client and I don't think there's anything wrong with that she didn't set up the situation okay so what I'm understanding you to be saying is that if she had originally been told this she would have gone ahead and accepted the settlement and she wouldn't have right but when time as time went by and she learned these other things and then she figured well now I have enough that there's bad faith now I'm going to go ahead and sue Dunbar so it it was she had two different perspectives based on the time frame but but for that a lapse of time but but for that lapse of time there she wouldn't have she wouldn't have had that outlook correct that's what you're saying correct and and I think that I think a jury can rationally decide that based on the evidence and based on what was in the depositions and you know this is not a situation of a setup the trial judge sort of made an irrebuttable presumption that if the plaintiff's attorney does not accept 10,000 in a case immediately that there's automatically an intent to set up bad faith there's nothing that Ms. Furman did to lead USAA into the various defaults of their conduct and there's no basis to put that cause of development on plaintiff's counsel it's solely on USAA. Maybe another way to let me just make sure I understand what you're saying am I correct in understanding that what you're saying is that when she originally considered it she would have settled it because there wasn't bad faith that she could even argue at that time so there was nothing to get out of it and it wasn't worth suing Dunbar but as time went on and by the time that she found out that there were no other sources of insurance then she thought she had enough on bad faith and then it became worthwhile to sue Dunbar is that what you're saying? Yes because she found out among other things that USAA had communicated with Dunbar on four occasions and never even asked for the information that's required by the argument about statutory requirements because it's just reasonable as evidenced by the Harvey case that this is something that a plaintiff's attorney has to have to even discuss acceptance of an offer and that is what is the array of potential sources so Ms. Furman could not even reasonably discuss this offer with her client until this information was provided and therefore USA was the cause of her inability to obtain reasonable consent from her client and therefore that is on USAA's conduct and led ultimately to an excess verdict and I would like to save the rest of my time for rebuttal thank you. Okay you've saved three minutes Mr. Nordby. Thank you your honor may it please the court I'm Daniel Nordby on behalf of USAA the district court properly granted summary judgment on two independent grounds either of which would justify affirmance unless the court would prefer otherwise I'd like to begin by addressing a couple of overarching principles of bad faith law before turning to the specific application on this record you've seen in the briefs from the other side that faith is ordinarily a question for the jury some of the cases say typically a question for the jury but it's not always a question for the jury both this court and Florida's state courts have affirmed summary judgments for insurers in bad faith cases on numerous occasions just last year in the reported decisions of Peleas versus Geico and Eris versus progressive judge Marcus sat on that panel this court affirmed summary judgments for insurers in bad faith cases where the record supported it there are earlier cases from this court as well Mesa and quiet cows I don't think anyone doubts that there can be summary judgment in a bad faith case thank you judge so then the question is whether summary judgment is warranted on these facts and I'll turn first to the question on causation Florida's law and causation requires the damages claimed by and insured to have been caused by the insurers bad faith that's something the Florida Supreme Court stated in Harvey and it's been a principle for a while I'm sorry to interrupt counsel I think I think we're all square on that the question that I have is based on what your friend on the other side of the aisle said which was as a reminder that at the time that that Furman asked for the information it was not provided and if it had been provided at that time she would have settled the case in fact she testifies in her deposition that's what she always does and she would have settled the case she says because you know basically it wasn't worth going after Dunbar in that situation but by the time that the depositions were taken and she learned that there were no other sources under oath that you know at that point she thought well now I have enough to show bad faith so now I do have an option assuming those to be the facts it seems to me that there would need to be evidence in the record to suggest that when she originally said you know that when she originally said that she would have accepted the offer that there's something that completely undermines that because otherwise it seems like it's a material issue of fact why is that not the case let me address that in a couple of ways like Judge Marcus I reread Miss Furman's deposition last night so let me point you to a couple of points in her deposition pages 51 to 52 of Miss Furman's deposition she acknowledged that she did not specifically call USAA to identify any deficiency in the deficiencies in the disclosure that had been provided echoes to bad faith it doesn't go to causation so at pages at pages 57 to 62 she obligated to do that was she obligated to what obligations did she have with regard to discerning whether there was another insurance policy she had she had obligations as to her client of course USAA had obligations as to its client and and the the record the totality of the circumstances here on the bad faith quest question shows that the adjusters here we know that she asked the insurance company on a couple of occasions she did she asked the insurance company for the information that was the insurance company ever say yes or no did they ever answer her the insurance company provided a sworn copy of the policy that had all of the items that Florida statute required that wasn't my question I understand that what the statute required they provided what I'm asking is when she asked for something additional to it whether there was any additional coverage she asked that question of the insurance company did the insurance company ever answer the question judge Marcus that she asked is any other insurance coverage that was known USAA the record is undisputed did not know of any other insurance coverage in fact there was no other insurance coverage so and the the additional requirement that miss Furman is in grafting on to the statute there is an obligation to affirmatively disclaim so my question is no they never answered her question because they didn't have to and the statute didn't require it that's right they did not know of other coverage isn't there help me with Florida case law isn't there Florida case law out there that obliges an insurance company to find the answer to that question sometimes I thought there was some DCA cases that said just that notwithstanding what the statute said there was an additional burden reposed on a fiduciary to inquire about whether there was other additional insurance so your honor I'm not sure the case you're referring to there there were some cases that were cited by my friend on the other side from this Florida Second District Court of Appeal about the statutory requirements those arose in the context of settlement discussions and the court determined that there was not a meeting of the minds behind what was required in a release I don't know if that's what you were going to or not but I didn't mean to cut you off though on the answer you were giving us okay well the the question and going back to judge Rosenbaum's question I think on causation was that there there was there was no evidence in this record here that that the conduct of USA actually caused the excess judgment here because well well here's what he's saying right he's saying that miss Furman said I would have settled it if I had originally gotten this information because I would have realized there was nothing there's nothing else I could do you know Dunbar's not good for it whatever there's no bad faith so I would have settled I didn't get the information by the time I got the information because of no fault of mine it took that long I thought I had enough for bad faith so why wouldn't I go after the bad faith part and and so there are two sort of questions to this the first one is which I think the district court might have concluded well because she originally got the information that there was no that there were no other sources of insurance and she didn't settle that shows that she wouldn't have settled the first time but I'm not sure that's true because there's a there's a slight difference in the factual circumstances the second time being that now there's enough for bad so because the circumstances have changed now she's not going to settle and if that and if that's not enough then the question becomes well is there any evidence in the record to suggest that we can't rely on or it doesn't create a material issue of fact when she testified that she would have accepted the offer when it came in if it had come in the first time you know if she had gotten all the information that she wanted and I think that's especially the case because she also testifies in her deposition that she does this all the time in her other cases so I think it would be very easy to prove if she were lying about that right I mean you just have to look at her other cases that she represents people in and if she doesn't do this all the time then you know you could show she was lying but seems like that might be a jury question why is that not the case well the the district judge determined that her her testimony on that was inconsistent with the other evidence in the record which other evidence other than what I've just discussed the evidence of the conduct between miss Furman and USA is adjusters over the course of the proceedings over this six weeks between the date of the accident and the date of the tender and that happens though so when you have testimony about one thing and then there's other evidence pointing in another direction don't we ordinarily say at summary judgment that that creates a genuine issue of material fact sometimes but but not always there have been there have been cases I believe it was right but cutting to the chase in order to get beyond that the other extrinsic evidence has to overwhelmingly discredit the assertion now the trial judge says that but tell me why this record shows that that the district court was free to discard the testimony of Furman who says if nothing else unambiguously I would have settled this case in September when they tendered the $10,000 limit if they had told me in an appropriate way that there was no other insurance out there that's what she says so the evidence has the overwhelming discredit that how does the evidence in this case so overwhelmingly discredited that the district judge was free to take that issue of causation away from the jury and decided for himself on summary judgment what miss Furman said in her deposition is that she would have settled if USAA had provided a disclosure that complied with the Florida statute and then she testified in her in her deposition of pages 57 to 62 she agreed going point by point through what the statute requires that the information she requested that the information that the statute requires was in fact received from USAA the statute does not require the insurer to state that there are no other policies so her statement was she would have settled all of which seems to me to be a better argument for why there was no bad faith than why there was no causation well I agree there's there's some overlap I think between between the two things because of the totality but you would have to concede that for the purposes we're talking about analytically they are distinct questions there may be some overlap in the evidence mrs. miss Furman says something else beyond the theory that at some point she came to figure out that maybe she really did have a good bad faith claim she says if I had known it in September I would not have spent a whole lot of time and the costs would have been a whole lot smaller than in fact they were they accrued they went up in time and that materially changed the circumstances in the case that's essentially what she said those are my words not hers but why isn't that also sufficient to take the issue of causation to the jury well judge the the tender of the policy limits on September 15th and then the subsequent conversation with with the adjusters there miss Furman stated that she needed to take a deposition of excuse me this is in October after the lawsuit was she needed to take the deposition of both the other driver at the third driver as well as mr. Dunbar determine whether there was other coverage she did not indicate any other information that she needed USAA had already provided her information compliant with what the statute required which is is what she later stated was what she was waiting for so given those facts there's there's simply not as the district judge found there's simply not evidence that if USA had done something different this excess judgment would not have happened let me ask you a different question going back to the issue of bad faith we know from the record that by the middle of the month of August your client knows one that the plaintiff Ilyas has been badly injured their bunch of broken bones there's a tour there's a torn aorta the medical expenses to date by by the by middle of August had far exceeded the $10,000 policy limit and your client in the middle of August that the police report had said Dunbar and Dunbar alone was responsible for the accident he was driving 70 miles an hour obviously recklessly his car flipped over hit one car went over the median and pancaked on Ilyas's car why wasn't there enough evidence to take the question of bad faith to the jury in so far as your client delayed from the middle of August when they knew those two critical things but didn't tend to the offer until the middle of September so let me address that this way the testimony of the adjusters the four adjusters here was consistent that they look at this in three stages coverage liability and damages so they determined relatively early that there was not a coverage dispute here the next question was liability and they determined by as Judge Marcus as you said by mid-August that liability was on the insured here was on Dunbar earlier before August 14th there was some inconsistency in the stories of how the accident occurred by August 14th when they received the police report they accepted liability so then the remaining question was damages and recall this was a multi car multi-passenger accident here so the testimony of Mr. Raymond in his deposition was that in these sort of accidents it is it is the standard practice and it is prudent to get as much information from each of the different parties before assessing damages is the driver of the SUV that was originally impacted does she have a claim potential claim for damages against Dunbar only after both verifying that information about Miss Brignani and then confirming with Miss Furman in September with a third adjuster mr. Johnson the nature of mr. Elise's injuries did then Ilias have those three things coverage liability and damages so that's the time when the then when the full tender policy limits was made thank you thank you very much thank you mr. Burlington you've got three minutes counsel misstated the evidence very clearly in saying that claimants counsel conceded that the statute was complied with she never conceded that she did not concede she got everything she asked for USA's attorney in her deposition asked it multiple times multiple ways as he's entitled to do he never got a concession she was absolutely clear and it is erroneous to say the statute doesn't require it subsection e of 627 4137 first there are five things listed and then it says in addition the insured or her or his insurance agent on written requests of the claimant of the claimants attorney shall disclose the name and coverage of each known insurer to the claimant and shall forward such for information as required by the subject doesn't say though that if there is no other insurer they have an obligation to say so yes and then it it doesn't say that it says the ensure at the end it says the insurer shall then supply the information they say well we didn't know well they could have there wasn't any yes there wasn't any but they never told us yep it would see that statute that you just read does not say that they have an obligation to tell you there is not it tells you that they have an obligation to tell you what insurance there is not that there is no other I I don't believe that's a reasonable construction of it in light of the fact that there is multiple Florida District Court cases that say what the legislature decided here was the information that a claimant's attorney needs to make a settlement decision and to say that they can remain silent and not answer the question deprives us of information and even if it's not required by the statute it is reasonable conduct that any person in their clients their insured situation would do if they were the one facing the excess judgment and they knew as they should know that that's critical and I would know that in the Kwiatkowski case of this court a bad faith case there is a statement regarding disclosure while all states response to recital was deficient in that it did not include a statement by Kwiatkowski or her insurance agent about additional insurance information all state had in its possession at the time I mean even if it's not required by the statute it's reasonable conduct that they know if you look at the Harvey case there was extensive testimony referenced about how this is done all the time and Harvey involved not even not just other insurance it involved other assets of the defendant and even the defense experts quoted in Harvey is saying plaintiff's counsel needs this information to advise their client about settlement and that's all that we asked for in this case it was reasonable there was no set up okay mr. Arlington we have your case thank you